IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

Case No. 07-14377-CIV-MOORE

CENTURY LAND DEVELOPMENT, L.P., et al.,

       Plaintiffs,

v.

FFL DEVELOPMENT, L.L.C., et al.,

       Defendants.

_____/

## ORDER GRANTING DEFENDANTS', FFL DEVELOPMENT, LLC, FRENCH & CO. FINE PROPERTIES, INC., CLARK FRENCH, VICTOR A. LOMBARDI AND JOSEPH M. FOGLIA, MOTION TO DISMISS AMENDED COMPLAINT

THIS CAUSE came before the Court upon Defendants', FFL Development, LLC ("FFL"), French & Co. Fine Properties, Inc. ("French and Co"), Clark French ("French"), Victor A. Lombardi ("Lombardi"), and Joseph M. Foglia ("Foglia") (collectively "FFL Defendants") Motion to Dismiss (dkt # 38). Plaintiff, Century Land Development, L.P. ("Plaintiff"), filed a Response in Opposition (dkt # 44). A Reply (dkt # 49) was also filed.

UPON CONSIDERATION of the Motion, Response, Reply, and being fully advised in the premises, the Court enters the following order:

**I.    BACKGROUND**

This dispute emanates from a St. Lucie County, Florida land sale. See Amd. Compl. at 5. Plaintiff, the buyer in this transaction, traveled from Pennsylvania to purchase Florida real estate for multi-unit development. Id. Plaintiff met with Defendant, Gerri Weits, who was a Keller Williams realty agent. Id. at 6. Plaintiff, and Weits acting as its agent, met with Defendant real estate broker Clark French. Id. French owns French & Co., a brokerage firm that, among other

things, aides out of state developers through South Florida permitting and building process. Id.

In his initial discussion with Plaintiff, French offered to sell Plaintiff a 1.79 acre parcel of oceanfront property in Indian River County, Florida ("parcel"). Id. The parcel was advertised as a site where Plaintiff could build a multi-unit development. Id. The parcel was actually owned by Defendant FFL, which consisted of Defendants French, Lombardi, and Foglia. Id. at 7. Plaintiff did not immediately purchase the vacant land, but continued speaking with French about the parcel and the logistics of obtaining county approval for multi-unit development. Id. Weits, Plaintiff's agent, analyzed the profitability of the parcel and French provided reassurance that the County would approve the parcel's multi-unit development site plan. Id. at 8. Based upon this information, Plaintiff contracted to purchase the parcel for $4.9 million. Id.

During the executory period, Plaintiff met with French and some individuals French recommended regarding permitting for the parcel. Id. At the permitting discussion, French and his consultants concluded that because the County had previously, tacitly approved a conceptual site plan for the parcel, approval of Plaintiff's site plan could be accomplished in under six months. Id. at 9. The closing took place on April 21, 2006 with French's and Weits' respective agencies each receiving $122,500.00 in commission. Id. Following the closing, Plaintiff learned that the parcel could not be utilized for multi-unit development and that development was limited to one (1) single family home. Id. at 10. The value of the parcel is greatly diminished if it can only support one single family home rather than a multi-unit development such as townhouses. Id. It is important to note, however, that all of the alleged misrepresentations regarding the parcel's suitability for multi-unit development dealt with likely approval. The sale was not made contingent upon approval as a multi-unit development and Plaintiff chose not to wait for county

approval before purchasing the property. The county's alleged tacit approval or very positive response did not replace the eventual need for actual approval.

As a consequence of the above described transaction, Plaintiff filed a ten (10) count complaint against parcel owner FFL Development, FFL's individual members, French, Lombardi, and Foglia, real estate brokerages French & Co. and Keller Williams Realty, and against agent Gerri Weits, individually. Id. at 11-24. In the complaint, Plaintiff alleges several types of fraud and misrepresentation, civil conspiracy, breach of fiduciary duty, and negligence. Id.

## II.    STANDARD OF REVIEW

A motion to dismiss for failure to state a claim merely tests the sufficiency of the complaint; it does not decide the merits of the case. Milburn v. United States, 734 F.2d 762, 765 (11th Cir. 1984). On a motion to dismiss, the Court must accept the factual allegations as true and construe the complaint in the light most favorable to the plaintiff. SEC v. ESM Group, Inc., 835 F.2d 270, 272 (11th Cir. 1988). "Factual allegations must be enough to raise a right to relief above the speculative level." Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955, 1965 (2007). However, as long as the allegations rise above a speculative level, a well-pleaded complaint will survive a motion to dismiss "'even if it appears that a recovery is very remote and unlikely.'" Conley v. Gibson, 355 U.S. 41, 45-46 (1957) (overruled on other grounds by Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955, 1959-60 (2007) (citation omitted). Nonetheless, to withstand a motion to dismiss, it is axiomatic that the complaint must allege facts sufficiently setting forth the essential elements of a cause of action.

### III. DISCUSSION

In the Amended Complaint, Plaintiff alleges seven counts against FFL Defendants.

### A.    Count I: Rescission of Contract For Sale

In Count I, Plaintiff seeks rescission of its Vacant Land Sale Contract ("Contract") with FFL. In its Amended Complaint, Plaintiff conclusively claims that the Contract is "void ab initio." See Amd. Compl. at ¶ 56. Plaintiff, however, makes this conclusory statement based upon allegations of fraud, the terms of which are expressly contradicted in the contract. Further, Plaintiff does not provide sufficient evidence to why the Contract is void given the Contract's clear disclaimers and "as is" language. Plaintiff provides nothing beyond mere speculation that the Contract is void.

On the third page of the Contract, in a separate section labeled "PROPERTY CONDITION," the Contract unequivocally states:

> LAND USE: **Seller** will deliver the Property to **Buyer** at the time agreed in its present "as is" condition, with conditions resulting from **Buyer's** inspections and casualty damage, if any. . . .(1) Feasability Study: Buyer, will at Buyer's expense and within 30 days from Effective Date ("Feasibility Study Period"), determine whether the property is suitable, in **Buyer's** sole and absolute discretion for **residential development** use. . . .Buyer will deliver written notice to **Seller** prior to the expiration of the Feasibility Study Period of Buyer's determination of whether or not the Property is acceptable. Buyer's failure to comply with this notice requirement will constitute acceptance of the Property as suitable for Buyer's intended use in its "as is" condition. If the Property is unacceptable to Buyer and written notice of this fact is timely delivered to Seller, this Contract will be deemed terminated as of the day after the Feasibility Study period ends. . . .[emphasis in original]

In addition, on page six of the Contract, three additional terms are conspicuously listed, one of which states: "[p]roperty is being sold 'AS IS' without entitlements, approvals or permits." See Amd. Compl. Ex. E at 6. Plaintiff argues that it was fraudulently induced and deceived into signing the Contract based upon oral representations and a sales brochure. See Amd. Compl. at §

49. However, under Florida law, as the case of Harry Pepper & Assocs., Inc v. Lasseter, 247 So.2d 736, 736-37 (Fla. 3d DCA 1971), states "[if there] is an inconsistency between the general allegations of material facts in the ... complaint and the specific facts revealed by the exhibit [attached or referred to in the complaint] ... they have the effect of neutralizing each allegation as against the other, thus rendering the pleading objectionable."

Here, the language of the Exhibit E [the Contract] creates a complete inconsistency between Plaintiff's allegations of fraud and the express, conspicuous terms of the Contract that requires Plaintiff to solely determine whether the parcel can support the residential development it desired. In fact, the Contract permits rescission in the event residential dwelling units cannot be constructed, but Plaintiff had to avail itself of this right within thirty days of the effective date. See Amd. Compl. Ex. E at 3. According to the facts alleged, and in the light most favorable to Plaintiff, Plaintiff signed the Contract, which provided it thirty days to conduct an independent analysis of the parcel's feasibility for multi-unit development. If Plaintiff did not approve of the parcel or its development potential, it could rescind if necessary. Plaintiff did not adequately exercise this right as it was not aware of the zoning restriction until well after the thirty day feasibility period had run. Based upon the facts as alleged, it appears Plaintiff did not contact the county zoning authority at any point during the feasibility period or before the closing, which did not occur until three months after Plaintiff had signed the Contract. Therefore, because the Contract specifically contradicts Plaintiff's claims and provided Plaintiff a period of protection, Plaintiff's rescission claim does not rise above a speculative level and Count I is dismissed.

B.    Counts II, III, and IV

In Counts II, III, and IV, Plaintiff alleges that FFL Defendants fraudulently and/or negligently induced Plaintiff to purchase the parcel through false statements pertaining to the parcel's suitability for multi-unit development. See Amd. Compl. at ¶71-76. Plaintiff, with minimal specificity, asserts that FFL Defendants made false statements claiming that (1) the parcel's site plan had been presented to the local planning authority, (2) that the plan had been well received, (3) the parcel could be developed into townhouses, and (4) that the site approval process would be brief. See Id.

Under the same reasoning stated in part A, the Contract is inconsistent with Plaintiff's fraud and negligence allegations. The Contract specifically mandates that the property is being sold "as is" and places the responsibility squarely on Plaintiff's shoulders to ensure that the parcel was suitable for Plaintiff's purposes. As one court held "a sophisticated purchaser of commercial property who agreed to an 'as is' purchase contract, had ample opportunity to conduct inspections, and could have discovered an alleged defect through the exercise of ordinary diligence, may be disgruntled, but does not have a cause of action for fraud." See Wasser v. Sasoni, 652 So.2d 411, 413 (Fla. App. 4. Dist. 1999); see also, Giallo v. New Piper Aircraft, Inc., 855 So.2d 1273, 1275 (Fla. App. 4. Dist. 2003) (holding that "a party cannot recover for fraudulent oral representations which are covered in or contradicted by a later written agreement"). Here, Plaintiff relied upon alleged fraudulent misrepresentations made by FFL Defendants as well as an allegedly misleading sales brochure. In a similar case, Hillcrest v. Pacific Corp. Yamamura, the court found that even when a misleading written summary was combined with oral misrepresentations, plaintiff did not have an action for fraud where Plaintiff had the "right and full and fair

opportunity to inspect the [property.]" 727 So.2d 1053, 1057 (Fla. App. 4. Dist. 1999). In addition, Plaintiff opted not to make the Contract contingent upon receipt of county approval or wait to purchase the parcel until the sellers had obtained actual, rather than tacit, approval. Therefore, given the clear terms of the Contract and Plaintiff's opportunity and responsibility to conduct an independent investigation into the suitablity of developing the parcel, Counts II, III, and IV are dismissed.

Furthermore, pursuant to Federal Rule of Civil Procedure 9(b), "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Pleadings satisfy F.R.C.P. 9(b) when the complaint "sets forth '(1) precisely what statements were made in what documents or oral representations or what commissions were made, and (2) the time and place of each such statement and the person responsible for making same, and (3) the content of such statements and the manner in which they misled the plaintiff, and (4) what the defendants obtained as a consequence of the fraud.'" Ziemba v. Cascade Intern., Inc., 256 F.3d 1194, 1202 (11th Cir. 2001). In Counts II and III, Plaintiff sufficiently alleges what fraudulent statements were made and their contents, but does not comport with 9(b)'s requisite specificity because Plaintiff fails to specify where those statements were made, when the statements were made, and the specific individuals responsible for making each of the statements. Consequently, Plaintiff's failure to comport with F.R.C.P. 9(b) provides an independent basis for dismissing Counts II and III.

### C.     Count V: Deceptive and Unfair Trade Practices

In Count V, Plaintiff asserts that FFL Defendants violated Fla. Stat. § 501.201, Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"). Plaintiff claims that the development brochure and oral misrepresentations constituted a deceptive trade practice. However, Plaintiff's claim fails because Plaintiff signed a contract whose terms contradicted the alleged misrepresentations, upon which Plaintiff supposedly relied. See Rosa v. Amoco Oil Co., 262 F. Supp. 2d 1364, 1368 (S.D. Fla. 2003). As one court held, where a Plaintiff signs a contract whose terms contradict the alleged misrepresentations, he is barred "from seeking relief pursuant to FDUTPA, as he acted unreasonably." Id. While the terms in Rosa expressly contradicted the alleged misrepresentations, here, the terms were sufficiently clear and in complete conflict with the alleged misrepresentations because the Contract's terms stated the parcel was being sold "as is" and Plaintiff was solely responsible for determining suitability. These clear terms make Plaintiff's actions unreasonable and prevent recovery under FDUTPA. See Id. Consequently, Count V is dismissed.

### D.     Count VI: Civil Conspiracy

Plaintiff's sixth count, civil conspiracy, alleges FFL Defendants conspired with one another in a concerted action to perpetuate a fraud upon Plaintiff. See Amd. Compl. at ¶88-93.

The elements of a civil conspiracy are as follows: "(a) an agreement between two or more parties, (b) to do an unlawful act or to do a lawful act by unlawful means, (c) the doing of some overt act in pursuance of the conspiracy, and (d) damage to plaintiff as a result of the acts done under the conspiracy." UTC Industries, Inc. v. Presidential Financial Corp., 976 So.2d 92, 94

(Fla. App. 3 Dist. 2008). Plaintiff alleges that Defendants FFL, French, French and Co, Lombardi, and Foglia entered an agreement for the purpose of defrauding Plaintiff. As this Court has found that no fraud occurred, Plaintiff's claim for conspiracy to defraud fails. See Buckner v. Lower Florida Keys Hospital Dist., 403 So.2d 1025, 1027 (Fla. App. 4 Dist. 1992) (stating the "gist of a civil conspiracy is not the conspiracy itself but the civil wrong which is done through the conspiracy which results in injury to the plaintiff. An act which does not constitute a basis for an action against one person cannot be made the basis of a civil action for conspiracy"). Count VI is dismissed.

### E.  Count X[1]: Misleading Advertising

In Count X, Plaintiff claims that FFL Defendants violated Florida Statute § 817.41 Misleading advertising prohibited. Section 817.41 states, "[i]t shall be unlawful for any person to make or disseminate or cause to be made or disseminate before the general public of the state, or any portion thereof, any misleading advertisement. Such making or dissemination of misleading advertising shall constitute and is hereby declared to be fraudulent and unlawful, designed and intended for obtaining money or property under false pretenses."

The law of this Circuit has held that "Florida law requires the plaintiff to prove reliance on the alleged misleading advertising, as well as each of the other elements of the common law tort of fraud in the inducement. The law is clear that reliance by a party claiming fraud must be reasonable and justified under the circumstances." Smith v. Mellon Bank, 957 F.2d 856, 858 (11th Cir. 1992). As held above in section B, Plaintiff's claim for fraud in the inducement fails

---

[1] Plaintiff's Amended Complaint contained a typographical error that mislabeled the Misleading Advertising Claim as Count VIII when it should have been Count X.

because the express terms of the written agreement contradict the development brochure's alleged misrepresentations. Plaintiff's misleading advertising claim fails because the conspicuous terms of the contract that stated "as is" and provided for an inspection period, prevent Plaintiff's claim of fraud and make his reliance on the brochure unreasonable. Plaintiff's Count X is dismissed.

### IV. CONCLUSION

It is ORDERED AND ADJUDGED that FFL Defendants' Motion to Dismiss Amended Complaint (dkt # 34) is GRANTED. It is

ORDERED AND ADJUDGED that Plaintiff's Counts I-VI & X are DISMISSED.

DONE AND ORDERED in Chambers at Miami, Florida, this 24th day of April, 2008.

K. MICHAEL MOORE
UNITED STATES DISTRICT JUDGE

cc: All counsel of record